# Sloss-Sheffield Steel & Iron Co. v. Mitchell.

## Damages For Overflowing Land.

(Decided May 20, 1909. 49 South. 851.)

1. *Action; Joinder; Single Cause.*—An allegation in the complaint that during the months of January and February, 1905, plaintiff's said lands were overflowed from the backwaters from said yards and railroads and remained under water for several days during said months was not the joining improperly of several separate and distinct overflows, since the injury done on any particular day could not be distinguished from that done on any other day.

2. *Waters and Water Courses; Overflowing Lands; Complaint.*—An allegation in an action for damages for the overflow of plaintiff's land caused by the obstructing the natural flow of the waters

[Sloss-Sheffield Steel & Iron Co. v. Mitchell.]

of a creek, that plaintiff's land was flooded or overflowed is not a sufficient statement of its injury to put defendants on notice of the nature of proof to be offered or the defect to be avoided, and it is not cured by an amendment in which the allegation as to the amount of damage is increased.

3. *Same; Obstruction; Evidenec.*—Where the overflow complained of occurred in the preceding January and February, the condition of the pipes, the clogging of which was charged to have caused the injury, as to being filled or partially filled with sand during the July following, is not admissible since their condition was liable to be affected by every rainfall, and their condition in July furnished no just inference as to their condition six months previous unless coupled with proof of a status substantially the same on the two dates.

4. *Same; Damages.*—Where the evidence showed that the obstruction of the natural flow of the creek backed water under a number of tenement houses and caused the floors to swell, the piers to settle and the sills to rot, but did not show loss of soil nor that any part of the premises was permanently overlaid with soil or other deleterious matter, the true measure of the damages was the reasonable expense of restoring the premises to their former condition, and the loss of income pending their restoration with reasonable expedition, but plaintiff was not entitled to compensation as for lasting damage to his lands.

5. *Same; Liability for Damage.*—Where plaintiff's land was overflowed by waters coming from two streams and the natural flow of the double volume is retarded by an obstruction of one of the streams placed there by defendant, the defendant would be responsible for the total damage.

6. *Same; Deduction; Duty of Person Injured.*—A land owner whose land is overflowed by the obstruction of the natural flow of the creek is in duty bound to make reasonable efforts to prevent the accumulation of damages.

7. *Damages; Reduction of Loss; Depreciation in Market Value.*— Where the cause of the damage is abatable, damages may not be recovered for depreciation in market value of the property damaged.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by G. B. Mitchell against the Sloss-Sheffield Steel & Iron Company for damages for causing overflow of lands by obstruction in the natural flow of a stream. Judgment for plaintiff and defendant appeals. Reversed and remanded.

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. —The allegations of the 1st count as to damages are not

set out with sufficient definiteness and certainty.—*City D. Co. v. Henry,* 139 Ala. 161. The court should have sustained appellant's demurrer to the 3rd count of the complaint as it clearly joins several distinct overflows.—*A. G. S. v. Sheehan,* 116 Ala. 302; 33 Ill. 175. As to the measure of damages counsel cite.—21 A. & E. Eucy. of Law, 726; 13 Cyc. 151. The case at bar is one of abateable nuisance where the injury is temporary and recurring as distinguished from permanent, so the depreciation in the market value is not an element of damage.— *Polly v. McCall,* 37 Ala. 20; *Union Springs v. Jones,* 58 Ala. 654; *City of Eufaula v. Simmons,* 86 Ala. 515; *T. C. I. & R. R. Co. v. Hamilton,* 100 Ala. 252; *Abercrombie v. Wyndham,* 127 Ala. 179. For like reasons, recovery cannot be had for damages for permanent injury.—Authorities supra. The 4th charge should have been given.—*T. C. I. & R. R. Co. v. Hamilton, supra.* The other charges refused relate to damages sustained and should have been given on the authorities cited supra.

SAM WILL JOHN, for appellee.—Counsel insists that the action is for permanent injury to the property and that the damages recoverable is the difference between the value of the land with and without the injury.— *Drake v. Lady C. I. & R. R. Co.,* 102 Ala. 509; *H. A. & B. R. R. Co. v. Matthews,* 99 Ala. 30; *Brinkmeyer v. Bethea,* 139 Ala. 376; *Tutwiler C. C. & I. Co. v. Mitchell,* 146 Ala. 274.

SAYRE, J.—This was an action for damages for the overflow of appellee's land, caused by the defendant's obstruction of the natural flow of waters in a creek or branch. In counts 1 and 2 it is alleged that plaintiff's land was flooded or overflowed; the damage inflicted

not being further particularized. This was not a sufficient description of the injury to put defendant fairly upon notice of the nature of the proof to be offered. The damages to be determined by the verdict of the jury were measured by the character and extent of the injury done to the plaintiff's property. They may have ranged from an inconsiderable inconvenience to the washing away of the soil, houses, etc., and defendant was entitled to be appraised with reasonable certainty and definiteness of the proof to be made.—*City Delivery Co. v. Henry*, 139 Ala. 161, 34 South. 389. True, these counts were amended, subsequent to the filing of the demurrer, by a change in the allegation as to the amount of damage sought; that is to say, by striking out the words "fifteen hundred" and inserting in lieu thereof the words "six thousand." But the amendment effected no change in the description of the cause of action and a refiling of the demurrer was unnecessary. The demurrers to these counts should have been sustained.

In the third count the "plaintiff avers that during the months of January and February, 1905, his said lands were overflowed from the backwaters from said yards and railroads, and remained under water for several days during said months." In *Alabama, etc., R. R. Co. v. Shahan*, 116 Ala. 302, 22 South. 509, it was held, over the dissent of McClellan, J., that a count of the complaint which averred injuries to the plaintiff resulting from several separate and distinct overflows was demurrable, for that it improperly joined separate and distinct causes of action. But the count under consideration is not open to that criticism. We construe it to allege an overflow continuing through several days, and covering parts of January and February, so that the injury done on any particular day could not be distinguished from that done on any other day. In this re-

spect the count was not objectionable. We find in the record no demurrer addressed to other counts of the complaint, and will not, therefore, consider those assignments of error which are based upon the supposed ruling on demurrer to them.

The overflow complained of was shown to have occurred in January and February, 1905. Over the objection of the defendant, the plaintiff was allowed to introduce testimony showing that the pipes, the clogging of which were charged to have caused the plaintiff's injury, were filled, or partially filled, with sand in July following. This evidence was relevant, of course only on the theory that it tended to show the condition of the pipes on and before the date of the injury. But the condition of the pipes in the respect inquired about was in the nature of things so liable to be affected by every recurring rainfall, and possibly other intervening and contributory causes, that their condition in July furnished no just inference as to their condition six months previously, unless in connection with proof of a status substantially the same on the two dates. The objection to this evidence should have been sustained.

Plaintiff had a number of tenant houses upon his land and it appeared in evidence that the overflow of water invaded some of the houses, leaving in those invaded, and under all of them, and on the land, slime, mud, and debris, causing the floors to swell, and piers to settle, and the sills to rot. The plaintiff testified that he had cleaned up the land and houses, and partially repaired the injuries done to the foundations and floors of the houses. This had been accomplished at an expenditure of $300, and had so far restored the premises to their original condition that the rent received from each of the houses had been diminished by 50 cents a month only. There had been no loss of soil, nor had any part

of the premises been seriously or permanently overlaid by soil deposited upon them. On these facts, without more, the plaintiff was not entitled to compensation as for the lasting detriment of his land—as for detriment not to be averted or removed by reasonable effort and expenditure.—4 Suth. Dam. §§ 1017, 1018; *Abercrombie v. Windham,* 127 Ala. 179, 28 South. 387. So far as these injuries are concerned, the true measure of plaintiff's damages was the reasonable expense of restoring the premises and the loss of income pending their restoration with reasonable effort, expenditure, and expedition. The plaintiff was in duty bound to make reasonable effort to prevent the accumulation of damages. In *Loker v. Damon,* 17 Pick. (Mass.), 284, plaintiff failed for a considerable time to repair a fence which defendant had wrongfully pulled down. Cattle got in and ate his grass. Chief Justice Shaw said: "In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative, and contingent consequences, which the party injured might easily have avoided by his own act. Suppose a man should enter his neighbor's field unlawfully and leave the gate open; if, before the owner knows it, cattle enter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open and passes it frequently, or through gross negligence, leaves it open all summer, and cattle get in, it is his own folly. So if one throw a stone and break a window, the cost of repairing the window is the ordinary measure of damage. But if the owner suffers the window to remain without repairing a great length of time after notice of the fact, and his furniture or pictures, or other valuable articles, sustain damage, or the rain beats in and rots the window, this damage would be too remote." So in *Chase v. N. Y. C. R. R.,* 24 Barb. 273, in an action to

recover damages for injuries done to plaintiff's house and grounds by water turned upon plaintiff's land by the defendant in constructing its railroad, it was held that the owner of the house was bound to use reasonable care, skill, and diligence, adapted to the occasion, to save her house from being injured ·by the water, notwithstanding it came upon her premises by the fault or negligence of the defendant, or suffer the loss. "After a wrong has been committed, it is the duty of the injured party to make reasonable efforts to prevent its increase." *Lawson v. Price,* 45 Md. 123. And in *Kan. Pac. Ry. v. Mihlman,* 17 Kan. 224, Judge Brewer, considering the cases quoted, said : "The proposition is sound that while a wrongdoer should compensate for all the injury naturally and fairly resulting from his wrong, yet the party upon whom ·the wrong is done should take reasonable effort to prevent any extension of the injury. If a party can with reasonable effort prevent an injury from spreading, he ought ·to do it. It is no more than simple justice to the party who has caused the injury, especially if that party has acted without malice, and without thought of causing injury."

The complaint alleges permanent injury to plaintiff's land, so that its desirability as a place of residence was impaired and its value depreciated; and for the purpose of establishing this allegation the plaintiff was permitted, over the defendant's objection, to introduce evidence of the market value of the premises before and after the overflow. It might suffice to dispose of this question adversely to the appellee to note that the complaint does not count upon permanent injury in general, nor does· it attribute such permanent damage· as the premises have suffered to· the permanence of the obstruction and ·the anticipated recurrence of overflows, but specially to the immediate consequences of the overflow counted upon;

that is to say, to the deposit thereon of slime, mud, and filth, which resulted from that overflow. We have shown that these damages were reparable, and not permanent. In the action brought all damages were recoverable which resulted from the overflow counted upon, and such as ensued without further fault, neglectful omission, or wrongful act on the part of the defendant. These elements of damage the plaintiff was allowed to prove, and presumptively they were figured into the verdict. Ordinarily, in personal actions, including trespass to realty, damages may be recovered which have accrued up to the time of the verdict, if they result naturally and proximately from the act complained of. In cases of damage by nuisance, it is considered that the injurious consequences resulting from the nuisance, rather than the act which produces the nuisance, is the cause of action, and hence it is held that the cause of action does not arise until harmful consequences occur, and damages are estimated to the time of bringing the suit; damages to occur subsequently as the consequences of a continuance of the nuisance being left for remedy by subsequent suits.—*Polly v. McCall,* 37 Ala. 20; *Roundtree v. Brantley,* 34 Ala. 544, 73 Am. Dec. 470; *West Pratt Coal Co. v. Dorman,* (Ala.) 49 South. 849. Also that each recurring overflow confers a new right of action. *Savannah, etc., R. R. Co. v. Buford,* 106 Ala. 303, 17 South. 395, and cases supra.

It would seem clear, on general principles of justice, that if a person has suffered injury from a nuisance by the permanent impairment of the value of his property, he must at some time be entitled to recover judgment therefor, but that he cannot recover damages as for a permanent injury—damages estimated on the hypothesis of the indefinite continuance of the nuisance, and as so permanently affecting the value of his property—and

be permitted to recover in successive suits damages by piecemeal for which he has received compensation in solido. The point of confusion in the cases on this subject is thus stated in *Schlitz Brewing Co. v. Compton*, 142 Ill. 511, 32 N. E. 693, 18 L. R. A. 390, 34 Am. St. Rep. 92: "Some cases hold it to be unreasonable to assume that a nuisance or illegal act will continue forever, and therefore refuse to give entire damages as for a permanent injury, but allow such damages for the continuation of the wrong up to the date of bringing the suit. Other cases take the ground that the entire controversy should be settled in a single suit, and that damages should be allowed for the whole injury, past and prospective, if such injury be proven with reasonable certainty to be permanent in its character"—and then follows, with citation of numerous authorities, the conclusion upon the whole that the more correct view is presented in the first-named class of cases. For one thing in this connection, it is to be noted, damages for permanent injury may not be proven or recovered without appropriate allegation. Further, if the proof show with reasonable certainty a wrong by which the value of property is affected, permanent and unabatable in law or in fact, damages should be allowed for the whole injury, past and prospective; otherwise, successive actions are to be maintained. And this alternative the courts incline to favor, to the end that the defendant may not acquire the right to continue the wrong on the one hand, and on the other that he may have a locus pœnitentiæ and be not compelled to pay for a permanent wrong to which he would put an end, perhaps, once it is adjudicated to be a nuisance. This conclusion is supported by the weight of reason and authority.—*Nashville v. Comar*, 88 Tenn. 415, 12 S. W. 1027, 7 L. R. A. 465; Suth. Dam. §§ 1039-1046. In this case the proof leaves no

doubt that the nuisance complained of was abatable and remediable, and plaintiff should not have been permitted to recover for depreciation in market value of his premises:—*H., A. & B. R. R. Co. v. Matthews*, 99 Ala. 24, 10 South. 267, 14 L. R. A. 462.

In the complaint the damage to plaintiff's land and houses is referred to an obstruction of the natural flow of a branch or creek. In some of the counts the stream is denominated "Jackson's Branch." The bill of exceptions recites that "the evidence of the defendant tended to show that the water which overflowed the plaintiff's land described in the complaint and caused the injuries complained of was the water that flowed or backed from Village creek onto the plaintiff's lands; that Village creek ran a short distance south of plaintiff's lands, and in times of freshet got out of its banks from a point above the defendant's furnaces, making a continuous sheet of water from Village creek; and that it was not the backwater from Jackson's branch and defendant's pipes that caused plaintiff's lands to overflow as alleged in the complaint." This description of the situation fails to inform us of the relative situation of the two streams, though evidently, in time of high water, at least, their waters commingled. When the evidence on behalf of the plaintiff is taken into consideration, it seems inferable that each of the streams contributed to raising the level of the overflow upon plaintiff's land; the natural outflow of the total volume of water being retarded by the obstruction in Jackson's branch of which complaint is made. Under such conditions the defendant would be responsible for the total damage, and charges predicating the damage as caused by the overflow from Village creek, without hypothesizing facts which would eliminate the contributory effect of the water from Jackson's branch, would present to the jury

a partial view of the case, and would be misleading and erroneous.

Charges must assert correct legal propositions in view of all the evidence, must not be abstract; ambiguous, or calculated to mislead, and must be true and consistent with the evidence in all its postulates of law and fact. —*Thrash v. Bennett*, 57 Ala. 156. A number of the charges refused to the defendant were subject to criticism on the grounds here indicated. What we have said will suffice for another trial.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ. concur.