# Sloss Sheffield Steel & Iron Co. *v.* Mitchell.

## *Damage to Land from Overflow.*

(Decided June 30, 1909.   Rehearing denied Feb. 26, 1910.
52 South. 69.)

1. *Waters and Watercourses; Overflowing Lands by Filling.*—Where a person, by filling in his lands on one side of a stream without obstructing the channel proper, causes water, in times of high water, to flow upon and over the lands of another to his hurt or damage, such person is liable therefor.

2. *Same; Exceptions as to City Lots.*—The exception to the rule that the owner of lower lands has no right to obstruct the natural flow thereon of water from the higher lands, as to city or village lots, applies only to drainage of surface waters, and does not apply to running streams.

3. *Same; Measure of Damages.*—The measure of damages for overflowing lands is the difference between the reasonable rental value of the house and lots with and without the overflow, during the time thereof.

4. *Same; Causing Overflow; Liability.*—Although the low land filled was the property of a third person, the defendant is liable for the damages caused to another by overflow, if the defendant deposited the filling on the low lands which caused the overflow.

5. *Same; Definition of Terms; Flowing Lands.*—Charges asserting that the defendant would not be liable for overflows, and consequent damage, the result of extraordinary floods, are properly refused as calculated to mislead the jury, in the absence of a definition of the term "extraordinary floods."

6. *Same; Applicability to Evidence.*—Where from the evidence it appeared that part of the damage may have resulted from the filling in of the low lands along the side of the stream, and part resulted from an extraordinary flood, a charge directing a finding for the defendant upon the finding by the jury that there had been an extraordinary flood was properly refused.

7. *Limitation of Action; Accrual of Right of Action; Overflowing Land.*—Limitation does not begin to run against a plaintiff's right of action for damages caused by overflows to his land, by reason of the filling in of low lands along the side of the stream, from the time of the filling in of the low lands, but from the time of the overflow of the land resulting from the filling.

8. *Actions; Joinder of Causes in One Count.*—A single count in a complaint for damages for overflowing lands, which claims damages for several separate and distinct overflows is subject to demurrer.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by G. B. Mitchell against the Sloss-Sheffield Steel and Iron Company for damages for causing the overflow of lands. Judgment for plaintiff and defendant appeals. See also, *Sloss-Sheffield S. & I. Co. v. Mitchell,* 161 Ala. 278, 49 South. 851. Reversed and Remanded.

The complaint was as follows: ·

Count 1: "Plaintiff claims of the defendant the sum of $10,000 damages in this: That on and prior to the 23d day of August, 1907, plaintiff was the owner and was in possession of the following described real estate in Jefferson county, Alabama, to wit: (Here follows a description by blocks and lots.) That all of said property is adjoining and contiguous, and still constitutes one tract or body of land. That on and prior to said date the defendant's servants or agents, acting within the line and scope of their authority, caused to be filled or partially filled or obstructed the channel of a branch or stream which ran near said property, which said branch or stream was a tributary of Village creek, and which empties into said Village creek at a point between Third and Fourth streets in the town of North Birmingham, and because thereof said streams were made to overflow said plaintiff's real estate above described. That water was made to flow over and stand upon said above-described real estate, which but for the conduct of the defendant's servants or agents as aforesaid would not have flowed upon or stood on said property. That water was made to flow upon or stand on said property by reason of the conduct of the defendant's servants or agents as aforesaid at various and divers times, and that because thereof plaintiff's property became inaccesible, large quantities of mud, slime,

filth, and debris were cast upon said land from time to time, greatly injuring and damaging same. That said property was suitable for residences, and that the same had been laid off in lots with a view of building residences thereon, or of selling the same. That a great many residences had been built thereon, which were occupied by plaintiff's tenants, for which he received large sums of money as rent. That by reason of the overflow and the standing of said water on said premises as aforesaid said property became undesirable and unhealthful. That it was made less valuable, and the market value was greatly decreased. The rent thereon was greatly impaired or reduced. The occupancy of his houses by tenants was prevented. That he was unable, because thereof, to obtain persons or tenants to occupy said premises, or to sell the same, or that the value of the rentals was greatly reduced. That the houses on said premises were made undesirable for occupancy because of the overflowing of said water through and under said houses, and of the standing of the water in and under said houses, caused as aforesaid. That said water caused to be deposited on and in said houses large quantities of mud, slime and filth, and that said houses were thereby made to decay, and the foundations thereof weakened and caused to give way. The chimneys on said houses were damaged and caused to sink and careen. That on account thereof plaintiff was unable to sell or dispose of said property to an advantage, or to rent the same, and that said premises have been rendered unhealthy, and sickness has resulted from the said overflows and standing of said water. That said property was otherwise rendered undesirable and untenantable. That the public highway on which said property abuts, namely, Stout's or Cheel's Road, which said public highway is also overflowed, and water was caused to

stand upon the same, rendering travel upon the same dangerous, inconvenient, and impossible, thereby greatly damaging said property. That by the conduct of defendant's servants or agents as aforesaid large quantities of water were caused to stand for days at a time on said property. That property adjacent and adjoining said property was caused to be overflowed by the conduct of the defendant's servants or agents as aforesaid, and water was caused to stand upon the same, rendering his said property inassessible, undesirable, and unhealthful. That the wells on said property from which his tenant obtained water for domestic purposes were filled with said overflow, and that the said water was filthy and unclean, and that the said wells were filled up and rendered less useful and valuable, and some were destroyed by said overflow. That the drinking water in said wells was rendered unwholesome and undesirable. That the poultry and live stock of the said tenant were drowned and damaged by reason of the said overflow, and the water standing on said premises as aforesaid. That a large number of dead animals were by said overflow cast and carried through and left upon said property, and on the property adjacent thereto, causing great stench, rendering said premises unwholesome, undesirable, and unhealthful."

Count 2 is very similar to count 1, except that the averments are changed somewhat in respect to damages, although all the damages alleged in the first count are alleged in the second and third counts.

The demurrers take the point that each count joins separate causes of action in one count, in that it claims for damages done by separate and distinct overflows, and also joins causes of action for separate and distinct torts in one count.

TILLMAN; GRUBB, BRADLEY & MORROW, and L. C. LEADBEATER, for appellant. The court should have sustained demurrers to the first, second and third counts of the complaint as amended. Each charges several distinct and separate torts.—*A. G. S. R. R. Co. v. Sahan,* 116 Ala. 302; *L. & N. R. R. Co. v. Cofer,* 110 Ala. 491; *Dusenberry v. R. R. Co.,* 94 Ala. 413; *S. A. M. R. R. Co. v. Buford,* 106 Ala. 303. This court has always adhered to the rule of the civil and not the common law, that the lower estate is servient to the upper for the purpose of carrying off surface waters.—*Dudley ats Farris,* 78 Ala. 124. And there is one recognized exception, such as city or village lots.—*Hall vs. Rising,* 141 Ala. 433; *Crabtree v. Baker,* 75 Ala. 94; *Ninninger v. Norwood,* 72 Ala. 277. The facts of this case bring it within the exception to this rule, and the court erred in refusing defendant's requested charges.

FRANK S. WHITE & SONS, for appellee. The court did not err in overruling the demurrers to the amended complaint.—Gould on P. L. & C. H. par. 87 and 89; *Bonnelli v. Bowen,* 11 South. 791; *Ryan v. The State,* 100 Ala. The court did not err in refusing defendant's requested charges.—*Butler v. Peck,* 16 Ohio St. 334; *Ninninger v. Norwood,* 73 Ala. 277; Id. 78. Ala. 124; *L. & N. R. R. Co. v. York,* 128 Ala. 305; *Sherrel v. L. & N. R. R. Co.,* 148 Ala. 1.

MAYFIELD, J.—This action is one for damages, brought by one riparian owner, the appellee, against another, the appellant, for wrongfully obstructing one or both of two streams of water, one known as "Jackson's Branch," the other as "Village Creek," the former being a tributary of the latter, and the lands flooded being near the junction of the two streams. It is alleg-

ed that in consequence of the obstructions complained of the waters of these two streams, in times of high water, were caused to flood or overflow the plaintiff's lands, to his great damage, in that slime and filth were cast thereon, impairing the healthfulness, desirability, and value of the lands for residences, the use to which they were put; that the rental value was greatly diminished thereby; that the houses thereon, 24 in number, were thereby greatly damaged, and a great number of other damages were particularly alleged. The complaint contained three counts, all of which were practically alike so far as need be considered on this appeal. Each was amended, and demurrers were overruled to each as amended. To the complaint as amended the defendant filed several pleas, the general issue, and some special pleas, unnecessary to here notice particularly. The trial resulted in a verdict and judgment for plaintiff, from which the defendant appeals.

The first error insisted upon is that the trial court erred in overruling defendant's demurrers to the complaint. The particular defect insisted upon is, first, that each count joins therein several distinct causes of action; second, that each count claims damages for separate and distinct overflows. If any count does, or attempts to do, either of the two things set forth above and pointed out by the demurrers, it is bad, and the demurrer should have been sustained.—*Shahan Case,* 116 Ala. 302, 22 South. 509; *Cofer's Case,* 110 Ala. 491, 18 South. 110; *Dusenberry's Case,* 94 Ala. 413, 10 South. 274. We do not think any one of the counts was subject to this defect, but the allegation was rather of a continuing injury by flooding plaintiff's lands for several days, and so that the injury done on one particular day is not distinguished from that done on another day except as

to amount and extent.—*Sloss-Sheffield Co. v. G. B. Mitchell,* 161 Ala. 278, 49 South. 851.

The next error insisted upon is the refusal of the court to give each of the charges 3, 11, 12, 13, and 14, requested by defendant. Each of these charges was confessedly intended to raise the question, Is the defendant liable under all the circumstances of this case for damages suffered by plaintiff on account of flooding his lands, if the flooding was caused solely by the defendant's filling in its own lowlands on one side of the creek not at all thereby obstructing the channel proper of the streams? Appellant concedes that this court has adopted the rule of the civil law rather than that of the common law as to this question. The rules of law applicable to this question are two, and have been thus stated by the court in the case of *Farris & Mc-Curdy v. Dudley,* 78 Ala. 124, 56 Am. Rep. 24: "The first of these principles is that the owner of the higher ground has a legal and natural servitude upon all lower estates, by which he is entitled to have discharged all surface water, or running streams, from the higher upon the lower estate, and the owner of the lower estate has no lawful right to obstruct the natural flow of such water, to the serious injury of the superior proprietor. The only recognized exception to this rule is said to be in the case of buildings erected upon city or village lots.—*Nininger v. Norwood,* 72 Ala. 277, 47 Am. Rep. 412; *Crabtree v. Baker,* 75 Ala. 91, 51 Am. Rep. 424; *Hughes v. Anderson,* 68 Ala. 280, 44 Am. Rep. 147; Wood on Nuisances (2d Ed.)) pp. 440, 446, 456. The second principle is strictly analogous, and applies to ordinary water courses, without regard to any question of the superior altitude of one adjacent estate to that of another. This rule is that a riparian proprietor, whether he be the owner of one or both banks of a running stream of water, has no lawful right to build any obstruction which, in times of ordinary flood, will opera-

ate to throw the waters of such stream upon the lands of another proprietor, so as to overflow and damage them.—*Ninenger v. Norwood, supra; Gerrish v. Clough,* 48 N. H. 9, 97 Am. Dec. 561, 2 Am. Rep. 165; 2 Kent's Com. 439. The whole law of nuisances rests upon the maxim of the common law 'Sic utere tuo ut laedas non alienum'—every man must so use his own property as not to injure that of his neighbor. So, the whole law of water courses is founded on the maxim 'Aqua currit, et curere debet'—water naturally runs, and must be allowed to run its natural course. As said in *Butler v. Peck,* 16 Ohio St. 334, 88 Am. Dec. 452, 'where two parcels of land, belonging to different owners, lie adjacent to each other, and one parcel lies lower than the other, the lower one owes a servitude to the upper, to receive the water which naturally runs from it, provided the industry of man has not been used to create the servitude;' or, as otherwise expressed in the same case, 'the owner of the upper parcel of land has a natural easement in the lower parcel, to the extent of the natural flow of water from the upper parcel to and upon the lower.' "

The appellant insists that the case in question falls within the exception of "city and village lots." While the lands in question may be within a village, the case made is not within the exception. The exception as to "city or village lots," if it does not apply exclusively to drainage of surface water, by artificial and municipal drainage, certainly it is to such cases the exception has been applied. We know of no case in which the exception has been extended to running streams or to change the rights of riparian owners as to the law of such streams.

The question in this case is not one as to the drainage of surface water, but is one as to the obstructing of

the flow of a natural stream.—Farnham on Waters and Water Rights, vol. 3, p. 2607; Gould on Waters, § 277; *Hall v. Rising,* 141 Ala. 433, 37 South. 586.

The next error insisted upon is the refusal of the trial court to give, at the request of the defendant, charges 4 and 7. It is insisted that each of these charges asserts only a correct proposition of law, that the defendant would not be liable for damages the result of an extraordinary or unprecedented flood—to put the proposition in a different form, that the defendant is not liable for the "act of God"—and that this is all the charges state. If this was all the charges asserted of course they were correct and should have been given.—*Gulf Co. v. Walker,* 132 Ala. 553, 31 South. 374; *So. Ry. Co. v. Plott,* 131 Ala. 312, 31 South. 33. An extraordinary flood or "act of God" was defined by this court in the above-cited cases and the rule stated to be as follows: "Foods such as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrence, must be taken into consideration in estimating hazards attending the obstruction of water courses. The term 'act of God,' in its legal sense, applies only to events in nature so extraordinary that the history of climatic conditions and other conditions in the particular locality affords no reasonable warning of them." This rule as thus stated by this court has been adopted by Mr. Farnham in his work on Waters and Water Rights, vol. 2, p. 1840, § 557A. These charges could well be refused because calculated to mislead the jury, in that they do not define "extraordinary floods." They also request a verdict for defendant based upon a part only of the evidence; a part of the damages might have been the result of an extraordinary flood, and a part that of an ordinary flood. Charges similar to these two were held to be properly refused in the above cases cited.

We do not think charge 8 correctly stated the rule as to the measure of damages as for loss of rents on account of the overflow. Of course plaintiff was not entitled to recover more than his actual damages on account of loss of rents. We think the difference between the reasonable rental value of the lots and houses with and without the overflow during the period covered by the suit is the correct measure of such damages. It is not equitable to fix the amount before the overflow at the reasonable rental value, and the amount after the overflow at what was actually recovered. The latter amount could be greatly increased by the industry of the landlord, or the scarcity of lands and houses of like kind to which increased value the wrongdoer would not be entitled, any more than he would be required to suffer the loss on account of the neglect or failure of the landlord to rent or collect, or to suffer the loss occasioned by failure of demand for such property after the injury to which he did not contribute.—Farnham on Waters and Water Rights, p. 1874 et seq.

We do not think defendant should escape liability if it actually obstructed the streams or the flow thereof, to the damage of plaintiff, as alleged and proven, merely because it did not own all the land upon which all of the obstruction was placed, if the damages were the result of that part of the obstruction not on its land, though it placed the obstruction there. This was the effect of charge 9, and it was therefore properly refused.

Charge 10 was properly refused. The action was not barred by the statute of limitations of 10 years by reason of the maintenance of the slag pile along the north side of Village creek in the same condition for 10 years preceding the time the damages were suffered or the action was brought. It is true, as contended, that 10 years' adverse possession of an easement may confer

title and right to such easement. If the lands in question had been overflowed in this manner by this slag pile continuously for 10 years the bar would be complete; but that is not the case. The slag pile might have remained as it did for 10 years without causing plaintiff any injury or damage; the evidence shows it would only damage him, as it is alleged in this case, during very high waters and then probably only in conjunction with other obstruction. So far as plaintiff was concerned defendant needed no prescriptive right or any other right from him to construct the slag pile.

Until some damage was done plaintiff thereby he had no right of action, and consequently the statute of limitations did not begin to run until his right of action accrued.—*Polly v. McCall*, 37 Ala. 20; *Sloss Sheffield Co. v. Mitchell*, 161 Ala. 278, 49 South. 851.

Finding no error in the record the judgment must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and DENSON, JJ., concur.

IN RESPONSE TO APPLICATION FOR REHEARING.

MAYFIELD, J.—We are of the opinion that each count of the complaint alleged more than one distinct cause of action, in that it claimed damages for separate and distinct overflows, and was therefore subject to the demurrer interposed thereto which took this point. The court therefore erred in overruling the demurrer to these counts. See *Shahan's Case*, 116 Ala. 302, 22 South. 509; *Cofer's Case*, 110 Ala. 491, 18 South. 110; *Dusenberry's Case*, 94 Ala. 113, 10 South. 274.

In the original opinion we held that these counts each contained but one distinct cause of action, in that they

[Louisville & Nashville Railroad Co. v. Zeigler.]

claimed damages as for one continuing overflow; but on further consideration we are at the conclusion that we were in error in the former opinion, to this extent.

It follows, therefore, that the application for a rehearing must be granted, and the decision of affirmance set aside. And a judgment will be now entered, reversing the judgment of the lower court for the error indicated, and remanding the cause.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, and SAYRE, JJ., concur.