GODDARD et al. v. KIRKPATRICK et al.

No. 31435. Aug. 3, 1943.

Rehearing Denied Sept. 28, 1943.

*141 P. 2d 292.*

Anglin, Stevenson & Huser, of Holdenville, and Richardson, Shartel, Cochran & Pruet, of Oklahoma City, for plaintiffs.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendants.

RILEY, J. This is an original action in its nature quo warranto, commenced May 18, 1943, by Charles B. Goddard and C. A. Beck, who with James W. McMahan constituted the State Game and Fish Commission by appointment, under authority of section 1, chapter 45, Session Laws 1925, amended by chapter 27, Session Laws 1929 (Title 29, O. S. 1941 §1). Plaintiffs' terms of office would have expired July 1, 1943, and June 14, 1945, respectively.

Defendants constitute the membership of the State Game and Fish Commission by virtue of appointments made and confirmations had on April 1, 1943, under authority of Senate Bill No. 89, enacted by the 19th Legislature (Harlow's Session Laws 1943, page 363), which by its terms creates a like commission, prescribes duties, qualifications, and terms of office, and repeals conflicting acts. The defendants have qualified and entered upon the discharge of duties of their offices to the exclusion of plaintiffs.

The validity of the authority under which defendants purport to act in the discharge of their official duties is challenged by this action, and for the purpose of establishing their contention that Senate Bill No. 89 is not the law, plaintiffs petition the court to resort to journals of the Legislature.

It is agreed that the act in question,

without the signature of the Governor, correctly enrolled, was on April 14, 1943, delivered by the Governor to the Secretary of State, and that the same now appears of record in the office of the Secretary of State.

Section 11, art. 6, of the Constitution of Oklahoma provides that before any bill shall become a law as a result of enactment by the Legislature, it shall be presented to the Governor for approval, to be evidenced by his signature, but that in event of objection the Governor shall return the bill to the house of its origin, with his objections, for legislative reconsideration. It is further provided that:

"If any bill . . . shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. . . ."

In the latter event the Governor's approval is required within 15 days after legislative adjournment. The 19th Legislature adjourned April 1, 1943. The bill in question, as recorded in the office of the Secretary of State, is duly authenticated (sections 16, 17, article 6, Constitution). Upon the issue as to whether this court will look beyond the enrolled bill signed by the presiding officers of the two houses of the Legislature, and in effect approved by the Governor's acquiescence and his affirmative act in transmitting the bill to the official registry, we may bear in mind the language of the Supreme Court of the United States in Field v. Clark, 143 U. S. 649, 36 L. Ed. 294. This court committed itself to the doctrine there stated in the early decision of Atchison, T. & S. F. Ry. Co. v. State (1911), 28 Okla. 94, 113 P. 921:

"The signing by the Speaker of the House of Representatives, and by the President of the Senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed Congress. It is a declaration by the two houses, through their presiding officers, to the President that a bill, thus attested, has received, in due form, the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him. And when a bill, thus attested, receives his approval, and is deposited in the public archives, its authentication as a bill that has passed Congress should be deemed complete and unimpeachable. As the President has no authority to approve a bill not passed by Congress, an enrolled act in the custody of the Secretary of State, and having the official attestations of the Speaker of the House of Representatives, of the President of the Senate . . . carries, on its face, a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by Congress. The respect due to coequal and independent departments requires the judicial department to act upon that assurance, and to accept, as having passed Congress, all bills authenticated in the manner stated; leaving the courts to determine, when the question properly arises, whether the act, so authenticated, is in conformity with the Constitution."

It was said in the opinion committing this court to the doctrine stated:

"It is not irrational to hold that when a legislative body has put forth a bill, meaning to do so, and that bill has been duly authenticated in the prescribed manner, then the common safety of law-abiding citizens requires that the courts should respect it as law, without inquiry into the mode of its passage. It is this consideration which lies at the foundation of the rule everywhere recognized, that no law can be impeached for fraudulent motives actuating the legislators, nor on account of corrupt influences brought to bear upon them. . ."

According to the expressed view in this jurisdiction, it is far better that a provision should occasionally find its way into the statute through mistake or even fraud than that every act should be at any and all times liable to be put in issue and impeached by the journals, "loose papers of the Legislature,

and parol evidence. Such a state of uncertainty in the statute laws of the land would lead to mischief absolutely intolerable."

As shown by the agreed facts, and as required by section 34, art. 5, Constitution, Senate Bill No. 89 was adopted by the House of Representatives and by the Senate on March 11 and March 15, 1943, respectively. As contemplated by section 35, art. 5, Constitution, the bill was signed in the presence of the respective houses by the presiding officers. On March 16, 1943, the bill was transmitted to the Governor, under the provisions of section 11, art. 6, Constitution, and thereafter, on March 22, 1943, the same being the fifth day subsequent to transmittal (by reason of the constitutional provision excluding Sunday intervening), at the request of the Senate, evidenced by its adopted motion, for the purpose of reconsideration, the Governor, without further affirmative action in either signing or by way of stating objections, returned the bill to the Senate. On the same day (March 22, 1943) the Senate reconsidered its action of adoption, declined then to concur in "Engrossed House Amendments to Engrossed Senate Bill 89," and requested the Honorable House to grant a conference thereon. No further action ensued until just prior to legislative adjournment, when the Secretary of the Senate, at the direction of the president pro tempore, returned the bill to the Governor.

By stipulation, we are afforded Rule 45(b) of the House of Representatives, showing adoption of Durham's Manual (Durham's Forum), wherein provision is made, in the absence of house rule, by concurrent action, for the recall of an enrolled bill from the Governor. The provision includes:

"But one house only may not for any purpose recall a bill from the Governor; neither may both houses make this recall after the bill has passed from the hands of the Governor."

Senate Rule 46 so provides. But it is stipulated that whereas from 1907 to 1931 there was adherence to the requirement for concurrent action of both houses for the recall of such a bill, during the past decade (1931-1941) 20 such bills have been recalled by the Senate; and whereas there was like adherence after statehood (1907-1925) to the rule requiring concurrent legislative action for such purpose, the House of Representatives, without concurrence of the Senate, within the past 16 years (1925-1941) has recalled 41 such bills. Under this showing it is urged that the recall of the bill in question is valid and that by reconsideration the legislative body last adopting the bill withdrew its approval so that the legislation failed. Thus the decisive issue presented is whether an enrolled bill, valid upon its face, may be impeached by resort to legislative journals.

In the case of Atchison, T. & S. F. Ry. Co., supra, wherein the form of the bill was in issue, this court answered the inquiry in the negative. While plaintiffs would distinguish our case of first impression by confining the rule to the form of the legislation, it is to be observed that the court designated the scope of its inquiry by presenting to itself the query: "Will the courts look beyond the enrolled bill signed by the presiding officers of the two houses of the Legislature and approved by the Governor to determine whether such bill was in fact passed by the Legislature?" In view of the broad scope of the inquiry, there can be little doubt that the law announced in the syllabus in that case is applicable both as to the form and the fact of passage of such a bill. The syllabus reads:

"When an enrolled bill has been signed by the Speaker of the House, and by the President of the Senate, respectively, in the presence of those bodies immediately after the bill has been read publicly at length, and the same has been approved by the Governor and deposited in the office of the Secretary of State, it is not competent to show from the journals of the House that the act so authenticated, approved, and deposited did not pass in the form in which it was signed by the presiding officers and approved by the Governor."

In the case of Phelps et al. v. Childers, State Auditor (1939) 184 Okla. 421, 89 P. 2d 782, it was contended that a bill failed by reason of legislative noncompliance with the constitutionally prescribed mode of enactment, but this court adhered to the rule stated, and cited as authority Coyle v. Smith et al., 28 Okla. 121, 113 P. 944, shown to have been affirmed by the Supreme Court of the United States, 221 U. S. 559, 31 S. Ct. 688, 55 L. Ed. 853.

In Coyle v. Smith (1911) the like contention was made, not as to the form of the measure, but as to its existence as a law. Therein the location of the site of government was involved, and it was held that:

"... It is not competent to show from the journals of the House that the act so authenticated, approved and deposited, was not read on three different days in each house."

In McNeal v. Ritterbusch, County Treasurer, et al., 29 Okla. 223, 116 P. 778, it was contended that the particular act "never passed the Legislature, was never signed or attested by the officers of the House and Senate . . . ;" but it was held to be "incompetent to prove by the journals of the Legislature that it did not pass in that form," and that no other evidence is competent to establish that the enrolled bill, duly authenticated, was different from the bill actually passed by the Legislature.

Johnson v. Grady County (1915) 50 Okla. 188, 150 P. 497, presented an instance wherein the converse of the rule prevailed. Therein the enrolled authenticated bill had been lost or destroyed, and it was held that necessity justified the establishment of the particular law from the best available sources, which consisted of documentary evidence. The opinion in that case was in complete accord with the consistent prevailing rule in this jurisdiction. That rule was recast in substantially the following form:

". . . an enrolled bill, duly filed in the office of the Secretary of State as the law provides, imports absolute verity, and . . . the same cannot be impeached by the legislative journals, and . . . it is not competent to show by the journals that the act was not regularly passed, and . . . when such an act was (is) called into question, the courts . . . look to the enrolled bill only."

See, also, Western Union Tel. Co. v. Hankins, 104 Okla. 11, 230 P. 857.

In Thompson v. Huston, County Treas., 170 Okla. 195, 39 P. 2d 524, it was again sought to show by legislative journals the absence in the Senate of a roll call on final passage of a bill, as required by the Constitution, but impeachment of the enrolled and recorded bill was denied under the view that the authenticated record imported an absolute verity.

In Ex parte Benight (1932) 53 Okla. Cr. 293, 11 P. 2d 208, it was contended in connection with the "Barbers' Bill" that legislative journals would show the bill in question, after passage and presentation to the Governor for his approval, was, within the five days allotted by the Constitution for executive consideration, vetoed and returned to the house of its origin, where it remained without further legislative action, and consequently failed of passage. In that instance the enrolled bill was duly authenticated and recorded, under such conditions as are present in the case at bar in the particular that the bill was allowed to become a law without the signature of the Governor. From the pleadings and admissions therein it appeared that within the five days allotted for consideration the Governor in fact returned the bill to the House of Representatives, suggesting changes by way of amendments, but indicating as to the bill "entire accord with its purposes." It was said that nowhere had the Governor expressed his veto nor was there further effective concurrent legislative action upon the measure, but the bill was returned to the Governor and it was declared to be a law. After an exhaustive application of the doctrine announced by the authorities cited, the court noted its agreement with the rule of conclusiveness announced by the Supreme Court as to all matters not required by the Constitution to be shown

on the journal and it was held that the enrolled bill signed by the officers of the House and Senate and filed in the office of the Secretary of State imports absolute verity, and that proof by the journal or otherwise that the bill did not become a law is incompetent.

Plaintiffs rely upon State ex rel. Dawson, Atty. Gen., v. Sessions, Secretary of State, 84 Kan. 856, 115 P. 641, Ann. Cases 1912A, 796, wherein, under the facts presented, after passage of a bill and on the day of its presentation to the Governor of Kansas, he returned it to the House with his objections, and on the same day the House adopted a resolution to recall the bill from the Governor. While there is language contained in the opinion to support the view that the bill was recalled under a custom considered significant in construction of its own powers by a co-ordinate branch of the government, nevertheless the author of the opinion indicated his view that the legislation was defeated by the Governor's return of the bill with the statement of his objections, amounting to a veto. The rule prevailing in Kansas was stated with citations in our case of first impression, and it was then determined that within this jurisdiction the court would pursue a course elsewhere prevailing, including the rule at common law.

In McKenzie v. Moore, 92 Ky. 216, 17 S. W. 483, relied upon by plaintiffs, the action was one to record a bill that had been passed by the Legislature and delivered to the Governor. The bill, because of objectionable features, was returned to the author and retained by him a year, while, in the meantime, a substitute bill was enacted and vetoed. Since there was nothing to show that the bill was ever in the possession of the Secretary of State or recorded, there is in that case no analogy with or variance from the rule prevailing in this state.

Likewise, in State v. Savings Bank of New London, 79 Conn. 141, 64 Atl. 5, there was considered the erroneous presentation of a bill to the Governor. The most recent decision that has come to our attention is State ex rel. Florida Portland Cement Co. v. Hale et al. (1937) 129 Fla. 588, 176 So. 577. Therein the court considered a bill, as in the case at bar, that had been duly passed by both the House and the Senate. It had been authenticated as required by the Constitution, presented to the Governor, and filed in the office of the Secretary of State, but the Governor, pursuant to the request of the House of Representatives, had returned the bill without objections. Under like constitutional provision applicable to the case at bar, the bill by the Florida court was declared to be a valid law. Under the syllabus it is stated:

"Neither the House of Representatives nor the Senate of the Legislature of Florida can by its independent resolution recall from the hands of the Governor a bill which has been duly passed by the Legislature, has been duly authenticated, and transmitted to the Governor for his consideration."
—and:

"The action of the Governor in transmitting bill . . . to House of Representatives . . . did not affect validity of act."

The opinion of the Florida court, citing authorities, called attention to lack of harmony in this country regarding the right of the Legislature to recall a bill duly passed and presented to the Governor, and classified the holdings as follows:

First, in some jurisdictions it is held competent to recall such bill when the legislative request is evidenced by a joint resolution. City of Ensley et al. v. Simpson, 166 Ala. 366, 52 So. 61; Robinson v. City of Ensley, 167 Ala. 226, 52 So. 69.

Second, when such bill is returned to one of the legislative bodies at its request for the purpose of amendment, although the request is not by joint resolution, concurrent action of both houses affords jurisdiction for reconsideration. Baltimore Fidelity Warehouse Co. v. Canton Lumber Co., 118 Md. 135, 84 Atl. 188; Teem v. State, 79 Tex. Cr. 285, 183 S. W. 1144; McKenzie v. Moore, supra.

Third, in other jurisdictions it is held

the Legislature is not empowered by joint resolution to recall such a bill and it may not be validly reconsidered, though the Governor returns the bill on request. Wolfe et al. v. McCaull (1882) 76 Va. 876, 96 A.L.R. 1311, note; People v. Devlin, 33 N. Y. 268, 88 Am. Dec. 377. In the cause at bar, as in the Florida case, there was neither joint resolution nor concurrent action, but the bill as transmitted to the Secretary of State by the duly constituted authority shows on its face the constitutionally required passage and authentication.

In the case at bar there was an entire absence of any action, joint or concurrent, on the part of the House of Representatives upon the request for, or the returned bill. But the subsequent action of the Senate attempting to make the bill subject to its power was, as in the New York case, "unauthorized and unusual, and it resulted in no agreement between the two houses."

As to such a situation as confronts us, the views expressed in the New York case are that one house cannot by its act of reconsideration "undo, annul, or change what both had solemnly done, under their solemn legislative sanction, according to all constitutional forms, and according to their published rules and forms of law." As Justice Campbell expressed it:

"The Legislature had declared its will; no further separate action was required or allowed; the streams issuing from Senate and Assembly fountains had flowed together and were now united in one. The united action of both houses would be necessary to recall the bill."

There the Assembly, without the consent and, as afterwards appeared, without the approval of the other house, asked and received the return of the bill from the Governor, but there was no further agreement between the Senate and the Assembly. The Legislature adjourned and the bill was again sent to the Governor and restored to its original condition. It had been passed by the Legislature and, by the approval of the Governor, became a law.

"The recall by the Assembly was an infringement of parliamentary law; it was an attempt to do alone what, if it could be done at all, required the joint action of both Senate and Assembly. All subsequent proceedings by the Assembly were irregular and of no effect, and when there was a failure to procure the assent of the Senate to an amendment, it was . . . the duty of the Assembly to return the bill to the Governor."

It is to be noted that under the rigid rule obtaining in Virginia the act of the Governor in returning a bill, presented to him for approval, in response to a joint resolution of the Legislature, is considered a mere "courtesy on the part of one co-ordinate branch of the government towards another, and was not intended and cannot be construed as a compliance with the requirements of the Constitution, that if he do not approve it, 'he shall return it (the bill), with his objections, to the house in which it shall have originated, who shall enter the objections at large on their journal.'"

Within that jurisdiction, under the rule stated "the constitutionally prescribed method of procedure between the enacting and approving law-making agencies is deemed exclusive," it is said that:

"The Constitution prescribes with minuteness the course the Governor must pursue with regard to bills placed in his hands, and its mandates are imperative. . . . The Constitution fixed his duty. He cannot evade that duty if he would, by allowing the Legislature to recall the bill from his hands, and to defeat, by mere non action, a measure they have once declared, with due solemnity, to have passed."

Yet, in the earlier New York case, People v. Devlin, supra, the rigors of the later Virginia rule did not prevail. There it was held that when the Governor, as in the case at bar, returned a bill presented to him for approval, at the request of only one of the legislative houses, any action taken by it alone upon the returned bill was a nullity. Nevertheless, the New York court contemplated that such a bill might be re-

called by the joint action of both legislative houses. The syllabus of that case reads in part:

"After a bill has passed both houses, and been signed and sent to the Governor for approval, it cannot be recalled, except by the joint action of both; if the Governor send back the bill, on the request of one house, any action it may take thereon is a nullity."

This court is not called upon to determine that affirmative joint action upon such a bill returned under a courteous regard had by one co-ordinate branch of the government for another would not as effectually repeal or amend legislation as would a new measure enacted for that purpose.

From a review of the authorities and the commitments of our own court to that which we consider the better reason rule, we conclude that the court must import a verity to the legislation herein considered as it appears upon the record in the office of the Secretary of State, duly enrolled and authenticated. It follows that the writs sought in the nature of quo warranto should be, and the same are, denied.

GIBSON, V.C.J., and BAYLESS, WELCH, HURST, and ARNOLD, JJ., concur. CORN, C. J., and OSBORN and DAVISON, JJ., dissent.

DAVISON, J. (dissenting). I am unable to concur in the conclusion announced by my associates. In my judgment Senate Bill No. 89, as enacted by the 19th Legislature, should be declared never to have become effective as a law by reason of its withdrawal by the Senate from the Governor before the expiration of time allowed the Chief Executive of the state to consider the act and weigh its merits as a law.

The act in question relates to the Game and Fish Commission of the State of Oklahoma. It was drafted to create a commission consisting of five members to be appointed by the Governor of the State with the consent of the State Senate. It contains provisions for recess appointment and prescribes the terms of the commissioners and fixes their compensation. It also contains a section repealing prior acts and another declaring an emergency.

The practical effect of the legislation, if valid, was to authorize the Governor to select the personnel of a new and larger Game and Fish Commission in lieu of the existing commission, the personnel (consisting of three members) of which had been selected during a prior administration by another Governor under the provision of section 1, ch. 45, S. L. 1925, as amended by chapter 27, S. L. 1929 (Title 29, O. S. 1941, § 1).

Under the act (Senate Bill No. 89, supra), the defendants herein were appointed by the Governor and confirmed by the Senate.

The plaintiffs are two members of the commission which existed prior to the enactment of Senate Bill No. 89. They assert that they, together with James W. McMahan, still constitute the commission. Their theory is that the questioned legislation never became effective as law because it was, by act of the State Senate, withdrawn from the Governor's hands before the expiration of the time allowed him under the State Constitution (art. 6, § 11) for consideration of legislation and before he had exercised his prerogative to veto the measure, approve it, or allow it to become a law without his signature.

The parties to this proceeding have entered into a stipulation as to the facts from which it appears that Senate Bill No. 89, having originated in the Senate during the 19th Legislature, was passed by the House of Representatives with certain "House" amendments and signed by the Speaker thereof on March 11, 1943. Thereafter the bill, as amended, was passed by the Senate and signed by its President on March 15, 1943.

On March 16, 1943, the bill was transmitted to the Governor. Thereafter, on March 22nd, the Senate adopted a motion requesting the Governor to return the bill to the Senate for further consideration. On the same day and pursuant to the request of the Senate, the Governor reurned he bill. The Gover-

nor had not approved or vetoed the bill. He relinquished possession thereof and returned the same to the Senate before the expiration of the time when the bill would become a law without his signature under art. 6, § 11, Oklahoma State Constitution, which provides:

"Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor; if he approve, ·he shall sign it; if not, he shall return it with his objections to the house in which it shall have originated, who shall enter the objections at large in the journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected to that House shall agree to pass the bill or joint resolution, it shall be sent, together with the objections, to the other House, by which it shall likewise be reconsidered; and, if· approved by two-thirds of the members elected to that house, it shall become a law, notwithstanding the objections of the Governor. In all such cases, the vote in both houses shall be determined by yeas and nays, and the names of the members voting shall be entered on the journal of each house respectively. *If any bill or resolution shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it,* unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. No bill shall become a law after the final adjournment of the Legislature unless approved by the Governor within fifteen days after such adjournment." (Emphasis ours.)

It is appropriate to notice at this point, in connection with the computation of time, the five days allowed by the Constitution, we exclude the ·first day (March 16th) and the following Sunday (March 21st). Thus the 22nd day of March, the date on which the bill was returned to the Senate at its request, fell on the fifth day. The Governor had until midnight of that day in which to determine what his action on the bill should be and could have vetoed it at any time prior to that time. McAlester v. Oklahoma Tax Commission, 174 Okla. 322, 50 P. 2d 647.

When the bill had been received from the Governor by the Senate, that body, on March 22nd, adopted a motion to reconsider its vote and thereafter adopted a motion refusing to concur in the "House" amendments and requesting the House of Representatives to grant a conference thereon.

No conference between the two branches of the Legislature was ever had upon the bill and the House of Representatives took no action in connection therewith.

On March 31, 1943, the bill was returned to the Governor, who, on April 14, 1943, delivered it to the Secretary of State. On March 31st the Governor appointed or attempted to appoint the defendants herein as members of the Game and Fish Commission. Notices of the appointments were transmitted to the Senate and on the same date approved by that body.

If Senate Bill No. 89 became and is the law of this state, the defendants constitute the Game and Fish Commission and should prevail in this action. If, however, the action of the Senate in requesting a return of the bill and the Governor's act in complying with that request operated to nullify the bill, the plaintiffs should prevail.

It may be observed at the outset of this discussion that our Constitution contains no provision either authorizing or forbidding the legislative branch of the government to recall legislative acts from the Governor after the same have passed the two Houses and have been transmitted to him for his consideration.

However, for years the practice of withdrawing legislation from the Governor's hands has prevailed in this jurisdiction. The rules of both branches of our State Legislature take cognizance of the practice. However, the rules contemplate that both Houses shall join in the request.

Notwithstanding the existence of these rules, the practice has prevailed whereby each of the two branches act independently in making such recalls and each had acquiesced in the other's independent action in recalling legislation from the Governor's desk which had previously been passed by both.

It is stipulated by the parties that during the ten-year period from 1931 to 1941 the State Senate, upon its own motion, had recalled from the Governor's hands 20 bills without any concurring action on the part of the House, and that during the period of 1925 to 1941 the House of Representatives, without concurrence of the Senate, recalled from the Governor 41 bills.

In considering the legal aspects of this case it may be recognized at the outset that the generally prevailing rule in jurisdictions such as this, where there is no constitutional inhibition against recall, is that both Houses must act in the matter in order to make the recall effective. 59 C. J. 578; Southerland Statutory Construction (3d Ed.) p. 257 par. 1506; Statutory Construction, Crawford, p. 72. But, generally speaking, this rule is announced by decisions wherein no custom of recall by one House appeared to exist.

The only concurring action on the part of the House in connection with the bill now before us is its continued acquiescence and participation in the practice of recalling bills by action of a single branch of the Legislature. In my judgment this custom actively indulged in by both Houses is sufficient to constitute by implication a concurrence by the House in the action of the Senate in the recall of the measure now before us.

There is no specific constitutional inhibition against the practice. Judicial disapproval of it at this time might well bring into retrospective as well as prospective operation many of the laws now deemed to be dead by reason of similar recalls.

It is contemplated by our Constitution that legislation shall be considered by three agencies before it becomes the law of the state: the two branches of the Legislature and the Governor. The latter's approval, disapproval, or acquiescence therein by silence is in its essential aspect negative in character and subject to control by the two houses of the Legislature when sufficient majorities of both of the houses are opposed to his views. Notwithstanding these characteristics, the judgment which the Chief Executive is authorized to exercise partakes of a legislative character. By the Constitution (art. 6, § 11, supra), the Governor is granted a limited time in which to formulate his judgment in connection with legislation transmitted to his desk for consideration. The limit upon the time for exercising the judgment contemplated by the Constitution, considered in conjunction with the fact that the time for the necessary deliberation comes during the session of the Legislature when many matters are pressing for attention, argues strongly for the recognition of rules of law that will not permit legislation to become effective without according to the Chief Executive the full time contemplated for consideration of a measure.

In returning the bill now before us upon request of the Senate, the Governor of this state was acting in accord with precedent and practice. He had not acted on the bill and his time for action had not expired. The bill is now allowed to become a law on the fictitious theory that the Governor had the bill under consideration subsequent to its return to the Senate and the full deliberation contemplated by the Constitution has not been accorded the law.

Custom as a factor in determining the effectiveness of a recall has been judicially approved. In State v. Sessions, 84 Kan. 856, 115 P. 641, the court discusses such a recall. It stated:

" . . . In this state it has been the practice for several years at least for each house by its own resolution to recall bills from the Governor. Counsel have furnished a list of 17 which have been so recalled in the last six regular sessions of the Legislature, and we find

that the practice existed before the period named. If the Constitution forbade this practice, the custom would not make it valid, but, in the absence of any express prohibition, the custom is significant as showing the construction of its own powers by a co-ordinate branch of the government.

"A law is not complete until it has been finally acted upon by the two houses and by the Governor. The action of the latter, it is true, may be only negative, as when he permits a bill to become a law by failing to return it in the prescribed period, still this implies consideration and authority. Until a bill has received the final consideration of the three lawmaking powers, viz., the House, the Senate, and the Governor, it is not a law (Pomeroy's Const. Law (3d Ed.) secs. 174, 176; People v. Bowen, 21 N. Y. 517; Kellogg v. State Treasurer, 44 Vt. 356, 8 Am. Rep. 383; The Power of the President, etc., 32 Am. Law Rev. 208), and, until such final consideration it must be subject to such changes as may be effected by authorized methods of procedure."

In the case of McKenzie v. Moore, 92 Ky. 216, 17 S. W. 483, 14 L.R.A. 251, it was alleged that a bill had been withdrawn from the Governor by a member of the House of Representatives who claimed he had obtained permission of the House. The sufficiency of the allegation was being considered. The court said:

" . . . The object in presenting a bill to the executive is to enable him to consider its various features, that he may understandingly approve or reject it. He must have time to consider its provisions, and with the courtesy extended members of the Legislature by the executives of the state that has grown into a custom, in permitting them to withdraw bills before mature consideration by him that appear to be objectionable, it would be a singular ruling to adopt, and one productive of much evil, to permit a member, however honest in his motives, to withdraw a bill from the consideration of the Executive that the member himself has introduced, and, after the lapse of months, with the Legislature adjourned, to declare the bill a law because it was once in the Governor's hands. It is no such presentation as contemplated by the Constitution for the member or the custodian of the bill to deliver it to the Governor, then immediately withdraw it, and claim that it becomes a law because the Governor failed to return it within the ten days . . . ."

In People v. Devlin, 33 N. Y. 269, 88 Am. Dec. 377, the recall of a bill was held to require the concurrence of both houses, but in the opinion (p. 381, 88 Am. Dec.) it was noted that there was no custom whereby a recall could be made by one house.

Custom has thus been recognized by the courts to sanction recall from the Governor of a bill previously passed by both branches of the Legislature. The courts of both Kansas and Kentucky have held that such recall can, if sanctioned by custom, be made by one house.

I agree with the views of those courts. Where the custom prevails and has been continuously practiced by the two houses of the Legislature, there is a concurrence by implication in the act of the other branch in making a recall.

I do not express an opinion on the question of whether the Governor must honor the recall. Should he refuse to return a bill on request, a problem would be presented which is not involved in this litigation.

The bill now before us was returned to the Governor at the close of the session. He kept it for 13 days and then sent it to the Secretary of State without signing the same. Having been previously effectively recalled and subsequently resubmitted to him less than five days before the close of the session, his failure to sign the same within the 15 days after adjournment prevented it from becoming a law as a reconsidered and resubmitted bill.

For the reasons stated, I respectfully dissent.

I am authorized to state that Mr. Justice OSBORN concurs in the views herein expressed.