MERACLE, Respondent, vs. DOWN, Appellant.

*October 14 — November 3, 1885.*

*(1) Change of venue: Ch. 314 of 1883. (2) Evidence of enactment of statutes: Printed copies. (3) Evidence: Immaterial error. (4) Vicious dog: Scienter. (5) Identity of dog: Evidence. (6-8) Contributory negligence: Instructions to jury: Loose seat in vehicle. (9) Excessive damages.*

1. Ch. 314, Laws of 1883, was never enacted by the legislature, and hence is not a law.
2. Sec. 4135, R. S., providing that the printed copies of the statutes shall be *sufficient* evidence thereof, does not make them *conclusive* evidence that a statute therein contained was enacted by the legislature. That such statute was not so enacted may be shown by the legislative journals.
3. An error in admitting testimony is immaterial if the other evidence upon the point is conclusive.
4. In an action for an injury caused by a dog, notice to or knowledge by the owner of its vicious character need not be shown. Sec. 1620, R. S.
5. In an action for injuries alleged to have been caused by defendant's dog attacking plaintiff's horses, it appeared that a neighbor living a mile distant also had a dog which the plaintiff admitted was very much like that of the defendant in form, shape, and general appearance, but it did not appear that the neighbor's dog was ever at the defendant's place where the attack was made. *Held*, that it was not error to exclude evidence that the neighbor's dog, like that of the defendant, was accustomed to attack horses.
6. Evidence showing that while plaintiff was driving along the highway in the dusk of evening his horses were suddenly attacked by a dog and jumped and kicked, and that plaintiff raised himself by the reins to his feet and while in that posture was thrown from the wagon and injured, is *held* not to show contributory negligence on his part.
7. A charge to the jury stating that one of the issues was whether the plaintiff was injured while he was "free from any fault causing or contributing directly to the injury," and that "if the injuries to plaintiff were caused by his intoxication, or by the loose manner in which the seat was placed upon the buggy in which he was riding, and not by the defendant's dog, the plaintiff would not be entitled

to recover,"— is *held* to state sufficiently the law of contributory negligence applicable to those facts.

8. But *quære* whether negligence can be predicated upon the fact that the seat in a vehicle is not securely fastened thereto.

9. A verdict for $1,600 damages is *held* not excessive where plaintiff's arm was broken and the use of his hand probably permanently impaired.

APPEAL from the Circuit Court for *Jefferson* County.

This is an action brought to recover damages for personal injuries sustained by the plaintiff by means of a fall from his wagon when driving his team along the public highway in front of defendant's dwelling. The alleged grounds of action are that the defendant was the owner of a dog which he allowed to run loose about his premises, and that the dog ran into the street, attacked plaintiff's team, bit one of them, and so frightened and crazed them that they jumped, kicked, and ran away, throwing the plaintiff from the vehicle and causing the injuries complained of. The vicious or mischievous propensity of the dog to attack and bite horses is alleged.

The testimony on the trial tended to show that the dog was theretofore accustomed to attack, worry, and bite horses, and that the plaintiff was injured because of an attack made by the dog upon his horses as alleged. The jury found for the plaintiff and assessed his damages at $1,600. A motion for a new trial was denied, and judgment entered for the plaintiff pursuant to the verdict. The defendant has appealed from the judgment. The case is further stated in the opinion.

For the appellant there was a brief signed by *Winfield Smith*, of counsel, and *Winfield Smith* and *Vince H. Faben*, attorneys, and the cause was argued orally by *Mr. Smith*. They contended, *inter alia*, that it was error to refuse to instruct the jury that the plaintiff could not recover if his negligence contributed to produce the injury. The gist of the action is the defendant's negligence in failing to keep a

vicious dog securely; and it is the universal rule that in such an action the plaintiff's contributory negligence defeats his action. *Vrooman v. Lawyer*, 13 Johns. 339; 1 Thomp. on Neg. (ed. 1880), p. 222, § 37; 2 id. p. 1002, note 3, pp. 1174–5, §§ 22, 23, p. 1004, subd. (5), note 1, pp. 1203, 1208, §§ 50, 51, 55; *Williams v. Moray*, 74 Ind. 25; Cooley on Torts, 346; Shearm. & Redf. on Neg. sec. 199; *Smith v. Pelah*, 2 Strange, 1264; *Blackman v. Simmons*, 3 Carr. & P. 138; *Ward v. Smith*, 4 id. 302; *Curtis v. Mills*, 5 id. 489; *Loomis v. Terry*, 17 Wend. 496; *Logue v. Link*, 4 E. D. Smith, 63; *Munn v. Reed*, 4 Allen, 431; *Muller v. McKesson*, 73 N. Y. 201, 202. There was evidence from which the jury might have found that the plaintiff was negligent in three respects: (1) In drinking to excess so as to lose self-control on the afternoon of the accident. *Hubbard v. Mason City*, 60 Iowa, 400; *Ill. Cent. R. Co. v. Cragin*, 71 Ill. 177; *Cramer v. Burlington*, 42 Iowa, 315. (2) In so loading his wagon that the seat could not be and was not securely fastened. (3) In his bad driving. If plaintiff had maintained his seat he would not have been thrown out. But he rose to his feet, the most dangerous position and one most likely to cause the injury which occurred. *Flower v. Adam*, 2 Taunt. 314; *Brooks v. Petershan*, 16 Gray, 181; *Gray v. Second Ave. R. Co.* 65 N. Y. 561.

For the respondent there was a brief by *I. W. & G. W. Bird*, and oral argument by *Mr. G. W. Bird*. They argued, among other things, that even if the proofs presented below failed to show that ch. 314, Laws of 1883, was never enacted by the legislature, yet, the question being raised here, this court will examine the records in the office of the secretary of state, and satisfy itself upon that point. 1 Greenl. on Evi. sec. 482; 1 Wharton on Evi. sec. 290; *Gardner v. Collector*, 6 Wall. 499; *Walnut v. Wade*, 103 U. S. 683; *Purdy v. People*, 4 Hill, 384; *DeBow v. People*, 1 Denio, 9; *Young v. Thompson*, 14 Ill. 380; *Spangler v.*

*Jacoby*, id. 297; *Speer v. Plank Road*, 22 Pa. St. 376; *In re Welman*, 20 Vt. 656; *Supervisors v. Heenan*, 2 Minn. 330; *Fowler v. Pierce*, 2 Cal. 165; *Bound v. W. C. R. Co.* 45 Wis. 543, 558. See, also, *Bradley v. Cramer*, 61 Wis. 572; *Giese v. Schultz*, 60 id. 451, and cases cited in brief of respondent. Contributory negligence does not defeat a recovery in this class of cases. The action is not based upon defendant's negligence in the ordinary acceptation of that term. It is his duty, at his peril, to restrain his vicious dog. No well-considered case has gone further than to hold that if a person with full knowledge of the evil propensities of an animal wantonly excites him or unnecessarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself and so not be entitled to recover. *Muller v. McKesson*, 73 N. Y. 195; *Lynch v. McNally*, id. 347; *Woolf v. Chalker*, 31 Conn. 130; *Denison v. Lincoln*, 131 Mass. 236; *Pickering v. Orange*, 1 Scam. 492; *M'Caskill v. Elliot*, 5 Strobh. Law, 196; *Mann v. Weiand*, 81 Pa. St. 243; *Brown v. Carpenter*, 26 Vt. 638; *Glidden v. Moore*, 14 Neb. 84; *Loomis v. Terry*, 17 Wend. 496. See, also, *Meibus v. Dodge*, 38 Wis. 308. The plaintiff was rightfully in the highway, and the dog, as to him, was a trespasser. The owner was liable, therefore, without regard to the question of plaintiff's contributory negligence. *Chunot v. Larson*, 43 Wis. 536. The statute (sec. 1620, R. S.), also, makes the owner's liability absolute.

LYON, J. 1. The defendant applied for a change of the place of trial from Jefferson county, where the action was pending, to some other county. The application was made solely on his affidavit that he had good reason to believe, and did believe, that he could not have a fair trial of the action on account of the prejudice of the people of Jefferson county. The circuit court granted the application, but subsequently, during the same term and while the record

still remained in such court, vacated the order changing the place of trial, and the cause was afterwards tried in the circuit court of Jefferson county. The vacating of such order is assigned for error.

The order changing the venue was made pursuant to ch. 314, Laws of 1883, which was supposed to be a valid law. The affidavit upon which the order was granted is entirely insufficient to authorize it under any other statute. It was vacated because it was made to appear to the court, by affidavit and reference to the legislative journals of the session of 1883, that ch. 314 was never enacted by the legislature. It passed the assembly, but was indefinitely postponed in the senate. Through some blunder it was enrolled as an act passed by both houses, was presented to the governor, and approved by him, and published as a law duly enacted. That it never was enacted, and hence is not a law, appears by the legislative journals and the records in the office of the secretary of state, of which probably the courts should take judicial notice; but if not, they seem to have been sufficiently proved.

Sec. 4135, R. S., makes an authorized printed statute sufficient evidence thereof, but we cannot think the legislature intended thereby to make that a law which, although so printed, was never enacted by both branches of that body. Evidence may be sufficient and yet not conclusive. To hold that ch. 314 is a valid law merely because it has been printed as such in the statutes, when it was never enacted, would be, in effect, to vest the power of legislation in some dishonest or inaccurate clerk. Of course the legislature, when it enacted sec. 4135, could not have intended anything so absurd and intolerable. We conclude, therefore, that the presence of ch. 314 in the Session Laws of 1883 is only *prima facie* evidence of its enactment by the legislature, which evidence is entirely rebutted by the conclusive proof that it was not so enacted.

The circuit court properly vacated the order changing the place of trial thus inadvertently made.

2. John Yoe, a witness called by the plaintiff, testified that immediately after the plaintiff was injured, he went to the defendant's house and informed Miss Down, the defendant's sister (who resided with him), and in his presence, of the accident and the cause of it, and that the sister replied: "The dog is always doing something. I have licked him many a time for running out at teams." Yoe also testified that defendant was asleep, but that they called his attention, and then he awoke. The defendant moved to strike from the testimony of Yoe all the conversation related by him which occurred when defendant was asleep. The court overruled the motion.

The material portion of that conversation was the remark of Miss Down, above quoted, which tended to show the vicious or mischievous habit of the dog. Certainly the defendant was awake some of the time when Yoe was there, and we are unable to find any satisfactory proof that he was asleep when such remark was made by his sister. He testified subsequently that he was not asleep when Yoe was there. Besides, if the testimony of what the sister said should be excluded, it is abundantly proved by other evidence in the case that the dog had been theretofore accustomed to bite, worry, and frighten horses. The testimony to this effect is so convincing and overwhelming that a special verdict to the contrary would have been set aside as against the evidence. We think the testimony was properly retained. If it was not, the error is rendered quite immaterial by the other proofs in the case.

3. Testimony was admitted, against defendant's objection, tending to show that about three months after the plaintiff was injured the dog attacked and bit a horse of Mr. Code, which he was driving before a buggy, and that Mr. Code immediately informed the defendant what his dog had done.

This testimony goes to show the vicious character of the dog, and the defendant's knowledge thereof. Probably it was inadmissible and should have been rejected. But the error is immaterial for the reason that the vicious character of the dog was conclusively proved by other and competent testimony, and it was not necessary to the action to prove the *scienter*. The statute dispenses with such proof. R. S. sec. 1620. Hence such error must be disregarded. Sec. 2829, R. S. It was argued that this testimony might have enhanced the damages. But that cannot be, because only compensatory damages were allowed or given.

4. It appeared on the trial by the testimony, and by the admission of counsel for the plaintiff, that one Williams, a neighbor of defendant, owned a dog very similar in appearance to that of defendant. Williams resided a mile from defendant. It is not claimed that there is any proof that the dog of Williams was accustomed to go to defendant's place, or that he was ever there.

The court rejected testimony offered for the purpose of showing that the Williams dog was also accustomed to attack, worry, and bite horses. Clearly the ruling was correct. The material question was, Did the dog of defendant or the dog of Williams do the mischief? The character of the latter dog was not in issue. The offered testimony, had it been received, would have raised a side issue which the pleadings did not call upon the plaintiff to be prepared to litigate. At most it was a mere make-weight, and we recall no rule of evidence which would justify the admission of the rejected testimony.

Counsel ingeniously argues that the testimony should have been received as adding another point of similarity common to the two dogs. But that seems scarcely necessary after the plaintiff had admitted that " they are very much alike in form, shape, and general appearance."

5. Mrs. Yoe, a witness for plaintiff, testified that she was riding with Miss Down the summer before plaintiff was

injured, and defendant's dog attacked and frightened the team they were driving. She was allowed to testify, under objection, to an admission then made by Miss Down that the dog had the bad habit of running at horses. Miss Down was cross-examined as to that conversation and denied any recollection of it.

It is claimed that the testimony was admissible as tending to impeach the credibility of Miss Down. We fail to find any testimony given by her as to the habits and character of the dog, and are inclined to think that when plaintiff examined her on that subject (which was entirely outside her testimony in chief) he made her his own witness to that extent, and was bound by her statement. But the conversation went only to the question of the character and habits of the defendant's dog, and we have already seen that he was proved to be vicious or mischievous beyond the power of a jury to find otherwise. So the error in admitting the impeaching testimony (if error it was) is of no importance.

6. The circuit judge instructed the jury at considerable length, and gave several instructions proposed on behalf of the plaintiff. He refused to give several instructions on behalf of the defendant in the terms proposed. Errors are assigned upon such refusal, and upon some portions of the general charge. These will now be considered.

After a careful examination of the charge and instructions so given, and of the instructions proposed on behalf of defendant, we think all of the propositions contained in the last-mentioned instructions were substantially and sufficiently given, except the following: (1) Proof that the dog of defendant attacked horses in one or two instances does not prove a vicious habit. (2) Playfully seizing the horses of the defendant, with which the dog was accustomed to play, does not amount to such habit. (3) The defendant is not liable unless, before the injury, he had notice of the vicious propensity of his dog.

The first and second propositions are inapplicable to the

case, for the uncontradicted testimony proves that during the two years before the plaintiff was injured, the dog repeatedly attacked and frightened horses which were being driven on the highways. The third proposition was properly refused, because, as already stated, the statute (sec. 1620, R. S.) dispenses with the necessity of proving the *scienter*.

One of the proposed instructions is that the plaintiff cannot recover if his negligence contributed to produce the injury. This instruction was sufficiently given in the general charge.

The only facts upon which it is claimed that the plaintiff was guilty of contributory negligence are these: The plaintiff was returning home from Palmyra when he was injured. While there, he drank two or more glasses of beer. When the dog made the attack, the horse attacked sprang and kicked over the tongue of the wagon. The plaintiff raised himself by the reins to his feet to hold the horse. The horse again kicked, and threw the plaintiff back on the seat, which tipped out of the wagon, throwing the plaintiff to the ground and inflicting the injuries complained of. The seat rested on cleats placed there to support it, but was not fastened thereto. If the plaintiff was guilty of contributory negligence, it consisted either (1) in being intoxicated; or (2) in rising to his feet in his effort to hold the horses; or (3) in using the wagon without having the seat fastened to the cleats.

No jury would be justified in finding that it was negligence for the plaintiff to rise to his feet when his horse suddenly kicked and became frightened. Drawing tightly upon the reins necessarily had a tendency to raise him from his seat, especially if his feet were braced against anything, as they probably were. Besides, he was acting in a sudden and dangerous emergency, without time for deliberation, and the natural impulse would be to rise, for the purpose of

ascertaining the cause and the extent of the peril. Especially would this be so in the dusk of the evening. The accident occurred about 8:30 P. M. on the 7th of April.

This leaves only the alleged intoxication of the plaintiff and the want of seat fastenings, upon which to rest the claim of contributory negligence. The jury were told that one of the issues in the case was whether the plaintiff was injured while he was "free from any fault causing or contributing directly to the injury;" and further that "if the injuries to plaintiff were caused by his intoxication, or by the loose manner in which the seat was placed upon the buggy in which the plaintiff was riding, and not by the defendant's dog, the plaintiff would not be entitled to recover." This we think a sufficient statement of the law concerning contributory negligence. We should hesitate, however, to hold that such negligence could be predicated of the fact that the seat was not fastened. We are aware of no rule of law which requires each person who rides in a wagon to keep the seat upon which he sits securely fastened to the vehicle, at his peril of being chargeable with negligence. Indeed, it is quite doubtful whether there was sufficient evidence tending to show contributory negligence on the part of the plaintiff in any particular to justify the submission of that question to the jury.

The court also instructed the jury as to the relative weight of positive and merely negative testimony, upon which instruction error is assigned. The instruction need not be here stated, because it related solely to the testimony of the character and habit of the dog, which, as already stated, was conclusively established. Had the court held (as it might properly have done) that the dog was proved to have the vicious or mischievous habit of biting, worrying, and frightening horses, no question of the relative weight of positive and negative testimony on that subject could arise. Hence the instruction is unimportant.

7. The last error assigned is that the damages are excessive. It must be conceded that the jury awarded quite liberal damages, yet, under well-settled rules, this court cannot disturb the verdict. The plaintiff's arm was broken — there being a transverse fracture of the radius,— a simple fracture three-fourths of an inch from the wrist joint (as we understand the testimony of the attending surgeon). The plaintiff was unable to work for three months, and then only with one hand, down to the trial, ten months after the injury. He could not then shut his hand. He has a wife and four children, and is about thirty years of age. Before he was hurt he was a farm laborer, and could earn from $20 to $25 per month besides his board. At the time of the trial he could not perform many kinds of farm labor, and could earn but little.

The testimony is sufficient to support a finding that the injury will be permanent; that he will never again have the use of his hand as before the accident. In such a case this court has held many times that it cannot disturb a verdict for excessiveness of damages unless they are so great as to be evidence of passion, prejudice, or corruption on the part of the jury. We have no such case here.

Our conclusion is that the record discloses no error of which the defendant can justly complain.

*By the Court.*— The judgment of the circuit court is affirmed.