Ex parte FORREST BENIGHT.

No. A-8379.   May 7, 1932.
(11 Pac. [2d] 208.)

P. E. Gumm, for petitioner.

J. Berry King, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondent.

EDWARDS, J. This is an original proceeding in habeas corpus. Petitioner alleges he is unlawfully restrained by the sheriff of Tulsa county. That he was charged and convicted in the court of common pleas for an alleged violation of article 2, chap. 24, Session Laws 1931, commonly known as the Barber's bill. That the alleged offense was a failure of petitioner to obtain a barber's certificate from the board of examiners provided for in said act. That the restraint is illegal and the court without jurisdiction, because said Barbers' bill never became a law. That said bill passed the House and Senate on or about March 11, 1931, and was presented to the Governor for his approval or disapproval. That within five days thereafter said bill was vetoed by the Governor, and was returned to the House with his objections thereto; that it was never passed over the veto as required by section 11, art. 6. Respondent admitted the restraint of petitioner, denied that said act did not become a law, and

pleaded the enrolled bill filed in the office of the secretary of state, together with letter of transmittal from the Governor dated April 10, 1931, stating the Governor had said bill in his possession more than five days, and it became a law without his signature. The case has been well briefed and ably presented by both counsel for petitioner and the Assistant Attorney General.

Respondent's contention is that an enrolled bill cannot be impeached by the House or the Senate Journal or by other evidence, but, if the court should hold a bill can be so impeached by showing that after it had passed both houses and had been sent to the Governor, it had been vetoed, then the message of the Governor is not a veto, but an unauthorized communication of no effect. From the pleadings, admissions, and the proof tentatively admitted, we gather that this is what really took place: House Bill No. 23 passed the House and the Senate and was duly signed by the Acting Speaker on March 10, 1931, and was signed by the President on March 11, 1931. It was then on March 13, 1931, transmitted to the Governor. On March 16 the Governor sent the bill with a lengthy communication to the House suggesting various changes and requesting that the amendments suggested be inserted, but, among other things, stating: "I wish to call attention to my message on this bill to show you I am in entire accord with its purposes." He nowhere in this communication stated that he had or would veto or disapprove the bill. The House upon receipt of this communication discussed the bill and made the amendments suggested, and sent it to the Senate. The Senate then did not act. A joint conference committee of the House and Senate met and made a conference report recommending that the bill be returned to the Governor, and that all records pertaining to the communication of the Gov-

ernor and the subsequent action of the House and the Senate thereon be expunged, which report was adopted by both houses on April 8, 1931. Thereafter, on April 10, the Governor transmitted the enrolled bill to the secretary of state; the letter of transmittal saying he had kept said bill in his office for more than five days while the Legislature was in session, and that it became a law without his signature.

Section 11, art. 6, of the Constitution, lays down the duty of the Governor in the enactment of legislation. Under this section, a bill passed by both branches of the Legislature becomes a law: (1) By being signed by the Governor within five days (Sunday excepted) after presentation to him; (2) by the Governor failing or refusing to sign the bill within said five-day period, and keeping possession and control of said bill during said time; (3) in the instance where the Legislature prevents the return of said bill within said five-day period by adjournment, and in this event the Governor must sign said bill within 15 days after such adjournment in order for it to become a law; and (4) when the Governor returns the bill to the house in which it originated, with his objection, within five-day period, and each house repasses said bill by a vote of two-thirds of the members elected to each house.

Since the Governor did not sign this bill, and it was not, after being sent to the Governor and his suggestions made to the House, again passed by a two-thirds vote of each house, the conditions enumerated above as 1, 3, and 4 have no application. If the bill is law, it became such under condition No. 2. At the outset we are met with the contention that this enrolled bill signed by the officers of the House and Senate and not by the Governor and

filed in the office of the secretary of state, imports absolute verity, and that proof by the journals or otherwise that the bill did not become a law is incompetent. The offer of proof was tentatively admitted subject to a determination as to its competency. The courts of many states have held that the journal of the two branches of the Legislature may be looked to for the purpose of impeaching a bill. On the other hand, many of the states have held that an enrolled bill is conclusive and may not be impeached by resorting to the legislative journal. On this point, the states appear to be about evenly divided. The question on a like state of facts has not been before this court, though a somewhat similar, but not the precise, question, has been considered by the Supreme Court in the cases of Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 Pac. 921, 925, 40 L. R. A. (N. S.) 1; Coyle v. Smith et al., 28 Okla. 121, 113 Pac. 944; McNeal v. Ritterbusch et al., 29 Okla. 223, 116 Pac. 778, 779; Johnson v. Grady County, 50 Okla. 188, 150 Pac. 497, 506; Western Union Tel. Co. v. Hankins, 104 Okla. 111, 230 Pac. 857. The decisions are thoroughly annotated in 40 L. R. A. (N. S.) 1.

The case of Atchison, T. & S. F. Ry. Co. v. State, supra, cites with approval Sherman v. Story, 30 Cal. 253, 89 Am. Dec. 93, as follows:

"Better, far better, that a provision should occasionly find its way into the statute through mistake, or even fraud, than that every act, state and national, should at any and all times be liable to be put in issue and impeached by the journals, loose papers of the Legislature, and parol evidence. Such a state of uncertainty in the statute laws of the land would lead to mischiefs absolutely intolerable."

In syllabus 1, it is held:

"When an enrolled bill has been signed by the Speaker of the House and by the President of the Senate, respectively, in the presence of those bodies immediately after the bill has been read publicly at length, and the same has been approved by the Governor and deposited in the office of the Secretary of State, it is not competent to show from the journals of the House that the act so authenticated, approved, and deposited did not pass in the form in which it was signed by the presiding officers and approved by the Governor."

In McNeal v. Ritterbusch, supra, the court said:

"As we have recently held in Atchison, T. & S. F. Ry. Co. v. State [28 Okla. 94], 113 Pac. 921 [40 L. R. A. (N. S.) 1], in effect, that an enrolled bill, duly signed by the Speaker of the House and by the President of the Senate, in the presence of those bodies, immediately after the bill has been read publicly at length, and later approved by the Governor and deposited in the office of the Secretary of State, as here, is presumed to have been duly passed by the Legislature, and that it is incompetent to prove by the journals of the Legislature that it did not pass in that form, there is nothing in the contention that the enrolled Senate Bill No. 245, is found in the office of the Secretary, of State (act approved May 29, 1908), materially differed from the bill actually passed by the Legislature."

It is suggested that some little doubt was cast on the soundness of this rule by the case of Johnson v. Grady County, supra, where the court said:

"When we propose to look into the journals of the two Houses of that session, we encounter some difficulty, because this court, in a very strong opinion by Justice Hayes in the case of Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 Pac. 921, 40 L. R. A. (N. S.) 1, holds that the rule obtains in this state that an enrolled bill, duly filed in the office of the Secretary of State as the

law provides, imports absolute verity, and that the same cannot be impeached by the legislative journals, and that it is not competent to show by the journals that the act was not regularly passed, and that, when such an act was called into question, the courts could look to the enrolled bill only. This case follows the unanswerable case of Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294, by Justice Harlan. To the same effect is McNeal v. Ritterbusch, 29 Okla. 223, 116 Pac. 778."

Similar language is used in the fourth syllabus. In the latter case, however, the enrolled bill could not be found and did not appear in the printed statutes certified by the secretary of state, as is made clear by the opinion of the court in that case. The enrolled bill here being in existence and on a file in the office of the secretary of state, and it also appearing in the printed statutes certified by the secretary of state (the Oklahoma Session Laws 1931), the implied exception to the rule in that case does not apply. The rule is reiterated in Western Union Tel. Co. v. Hankins, supra. Petitioner insists that in each of the Oklahoma cases cited the journal was examined on some phase. We are in agreement with the rule of conclusiveness announced by our Supreme Court, upon the state of facts shown in the various cases cited. That is, that the enrolled bill is conclusive as to all matters not required by the Constitution to be shown on the journal, and as to all matters required to be shown where the journals are silent as to compliance with constitutional requirements. We are not prepared to say, however, that under any and every state of facts the journal may not be examined to impeach an enrolled bill. If a bill shall pass both branches and be signed by the proper officer of each branch and be transmitted to the Governor, and he shall veto and return it to the House in which it originated, and it is not passed over the veto, but shall

later appear in the office of the secretary of state, then surely the fact of veto and failure to pass over the veto may be shown in a proceeding to determine the existence or validity of the bill as law.

When a bill has been vetoed by the Governor, it cannot become a law unless and until it shall have been passed over said veto in the manner required by section 11, art. 6, Constitution. Such mandatory constitutional requirements cannot be ignored nor dispensed with. This view is strengthened by the very recent decision of the Oklahoma Supreme Court in Nation et al. v. Chism et al., 154 Okla. 50, 6 Pac. (2d) 767. In that case the plaintiffs in error brought an action in the district court to enjoin defendants in error from enforcing the Barbers' bill (the act in question in the instant case). The petition, among other things, alleged that the purported act was never enacted by the Legislature, and never became a law. The district court sustained a demurrer to this petition. The plaintiff appealed, and the Supreme Court reversed the case and remanded it to the lower court, with directions to overrule the demurrer, and for further proceedings not inconsistent with the opinion. Since the enrolled bill was pleaded, the meaning of the opinion in that case must be that the plaintiff could go behind the enrolled bill and show that it had not been enacted; otherwise the lower court would not have been directed to overrule the demurrer and proceed further. If the enrolled bill imported absolute verity, it would be useless to overrule the demurrer and proceed further with the case.

The communication of the Governor to the House, hereinbefore referred to, suggesting certain amendments in House Bill No. 23, is not and does not purport to be a

veto. In Peebly v. Childers, 95 Okla. 40, 217 Pac. 1049, it is held by the court in syllabus 3 and 4:

"While engaged in considering bills which have passed both houses of the Legislature, and which are presented to him for approval or disapproval, the Governor is acting in a legislative capacity and not as an executive. While exercising this function, the Governor is a special agent, with powers limited by the Constitution, and he can only act in the specified mode, and can exercise only the granted powers. If he attempts to exercise them in a different mode, or to exercise powers not given, his act will be wholly ineffectual for any and every purpose." City of Lowell v. Dadman, 191 Mass. 370, 77 N. E. 717.

The communication states that the Governor is in sympathy with the bill; it was evidently made on the assumption that he had the right on his own initiative to return the bill to the House for amendment. The Governor had authority either to approve and sign the bill or to return it with his objections to the House in which it originated. Section 11, art. 6, Const. As he did not do this, the bill as a matter of law remained in his possession, and, at the expiration of five days, it became a law without his signature.

The writ is therefore denied.

DAVENPORT, P. J., and CHAPPELL, J., concur.